**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PATAGONIA, INC., | Case No.: 2:26-cv-00586-RGK-RAO |
| Plaintiff, | |
| v. | [~~PROPOSED~~] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION |
| ENTREPRENEUR ENTERPRISES, INC. DBA PATTIE GONIA PRODUCTIONS and WYN WILEY, | |
| Defendants. | |

## 1.    PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## 2.    COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with Federal Rules of Civil Procedure and this Court's Local Rules. Should any party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

**3.    LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4.    PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) The relevant time period for the search of ESI is January 1, 2022 to January 21, 2026. b)   If a party that produced discovery material in this proceeding (the "Producing Party") contends that any discoverable ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that party will timely identify such ESI with reasonable particularity and will provide the party that receives discovery material (the "Receiving Party") with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI), and the location of such ESI.  The parties will negotiate in good faith concerning the production of any such ESI.  The data sources not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) will be preserved but not searched, reviewed, or produced until if/when the parties reach

an agreement.;

b) Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following: back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium; temporary data stored in a computer's random access memory (RAM), or other operating system files; deleted, fragmented, unallocated space or other data only accessible by forensics; on-line access data such as temporary Internet files, history, cache, cookies, and the like; server, system, or network logs; data remaining from systems no longer in use that is unintelligible on systems in use; ephemeral data automatically deleted by its nature or design by the application, settings, or operating systems, digital voicemail, text messages, instant messaging, and automatically saved versions of documents (unless revisions are demonstrably relevant).

## 5. SEARCH

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

If a party intends to use technology assisted review ("TAR") to cull or otherwise exclude ESI from collection, review, or production, the parties will meet and confer to agree on a TAR protocol, including validation and disclosure of TAR metrics. The parties agree to meet and confer regarding using TAR on paper documents or structured data types. The parties do not need to disclose the use of TAR solely for the purposes of sorting or prioritizing documents for review.

## 6. PRODUCTION

### A. Each Production Will Have Four Main Components

1. directory titled "images" containing images of every page

of every Document in the production, Bates-numbered sequentially.

2. A directory titled "natives" containing Native Files for a subset of the Documents, as described below, each file named with the Bates number of the first page of the Document, and with the same extension as the original Native File type of the Document.

3. A directory titled "text" containing OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

4. A directory titled "data" containing image and metadata Load Files that contain the Bates ranges and Metadata for each Document.

**7.    PRODUCTION FORMATS**

The Parties agree to produce in the formats described below. If any Party contends that Documents warrant a different format, the Parties will meet and confer to determine a mutually acceptable production for such Documents.

    **A.    Image Files.** Document images must be produced in a single-page Group IV tagged image file format (TIFF) with at least 300 DPI print setting. Documents containing color must be produced in single-page color JPEG format initially. Each image must have a unique file name, which is the Bates/control number of the document. Original document orientation must be maintained *(i.e.,* portrait to portrait and landscape to landscape). Images must reflect all data, including track changes, comments, and speaker notes, that would otherwise be visible to the reader using the native software that created the document.

    **B.    Color.** Color images must be produced in single-page JPEG format.

    **C.    Text Files.** For each document, a single text file must be provided along with the image files and metadata. The text file name must be

the same as the Bates/control number of the first page of the document.  Text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a hard copy file.  In these instances, a text file created using optical character recognition (OCR) will be produced in lieu of extracted text.

**D.    Native Files.**  Unless redacted or for some other good cause, spreadsheets, audio or video media files, documents with embedded media files, or any other files that lose significant information and meaning if produced as an image must be produced in native format.  Any files that are produced in native format must be produced with a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format, as well as all extracted text and applicable metadata set forth in Paragraph IV.

**E.    Hard Copy Documents**

    **1.    OCR Acquired Text Files.**  When subjecting physical documents to an OCR process, the settings of the OCR software must maximize text quality over process speed. Any settings such as "auto-skewing", "auto-rotation" and the like should be turned on when documents are run through the process.

    **2.    Unitizing of Documents.**  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.,* paper documents should be logically unitized).  In the case of an organized compilation of separate documents - for example a binder containing several separate documents behind numbered tabs - the documents behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the

beginning and ending document and attachment fields.  The parties will make their best efforts to unitize documents correctly.

**F.**   **Load files.**  Except where noted in section (L) below, all ESI is to be produced in electronic format, with file suitable for loading into a compatible litigation support review database.  All productions will include both image and metadata load files, as described below in Paragraph III, Load File Format.

1.   **Delimited Text File**:  A delimited text file (.DAT or .CSV) containing the fields listed in Paragraph III should be provided.  The delimiters for the file can be Concordance defaults, but defined delimiters are acceptable:

- Comma - ASCII character 20 ( )
- Quote -  ASCII character 254 (þ)
- Newline - ASCII character 174 (®)

2.   **Image Cross-Reference File (Load File)**:  The Image cross-reference file (.OPT) is a comma delimited file consisting of six fields per line.  There must be a line in the cross-reference file for every image in the database.  The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,PageCount

- **ImageID**: The unique designation used to identify an image.  This should be the Bates number of the document.
- **VolumeLabel**: The name of the volume.
- **ImageFilePath**: The full path to the image file.
- **DocumentBreak**: If this field contains the letter "Y," then this is the first page of a document. If this field is

blank, then this page is not the first page of a document.

- **PageCount**: Number of pages in the document.

Sample Data:

CNTRL00000001,VOL001,\IMAGES001\CNTRL00000001.TIF,Y,,,1

CNTRL00000002,VOL001,\IMAGES001\CNTRL00000002.TIF,Y,,,2

CNTRL00000003,VOL001,\IMAGES001\CNTRL00000003.TIF,,,,

CNTRL00000004,VOL001,\IMAGES001\CNTRL00000004.TIF,Y,,,4

CNTRL00000005,VOL001,\IMAGES001\CNTRL00000005.TIF,,,,

CNTRL00000006,VOL001,\IMAGES001\CNTRL00000006.TIF,,,,

CNTRL00000007,VOL001,\IMAGES001\CNTRL00000007.TIF,,,

**G.    De-Duplication.**  ESI should be de-duplicated globally across all custodians and data sources (both vertically or horizontally).  Hard copy documents should not be de-duplicated.  All custodians who were in possession of a de-duplicated document must be identified in the CUSTODIANS_ALL metadata field (*see* paragraph III).  Exact duplicate documents should only be identified based on individual document MD5 or SHA-1 hash values only.  However, removal of duplicate documents should be done at the family level (e.g., a standalone document should not be removed if it has the exact duplicate as part of an Email family.)  All Blind Copyees (BCC) recipient names that would have been provided in the BCC metadata field but are now excluded because of de-duplication must be identified in the BCC metadata field (*see* paragraph III).  As part of rolling productions of documents or other ESI, the Producing Party must provide supplement load files, which should include updated CUSTODIANS_ALL, FILEPATHS_ALL, and BCC metadata (if requested).

**H.    Redaction.**  If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced.  ESI that does not render well (e.g., spreadsheets) or cannot be rendered in mage format (e.g., audio files) can be redacted in native format.  The Producing Party will provide searchable text for those portions of the document that have not been redacted.

**I.    Metadata Fields and Processing.**  Each of the metadata and coding fields set forth in Paragraph IV that can be extracted from a document should be produced for that document.  The parties are not obligated to populate manually any of the fields in Paragraph IV if such fields cannot be extracted from a document, with the exception of the BATES-related, PRODVOLID, CUSTODIAN, CUSTODIANS_ALL, and TIMEZONE fields, which should be populated by the Producing Party.

**J.    System Files.**  Common system and program files need not be processed, reviewed or produced.

**K.    Email.**  Email must be collected in a manner that maintains reliable email metadata and structure.  Whenever possible, email must be collected from the Producing Party's email store or server.  Metadata and "header fields" should be extracted from email messages.  Unless otherwise agreed to by the parties, email collections should include calendar meetings and appointments.

**L.    Microsoft "Auto" Feature and Macros.**  Microsoft Office applications, including Word, Excel and PowerPoint, may contain "auto" feature settings that would cause a document date or similar information within the document, file names, file paths, etc. to automatically update when processed.  If the Producing Party

identifies "auto date", "auto file name", "auto file path" or similar features within the documents that would deliver inaccurate information for how the document was used in the ordinary course of business, and to the extent reasonably capable by their eDiscovery processing platforms, a TIFF image branded with the words "Auto Date", "Auto File Name", "Auto File Path" or similar words that describe the "auto" feature must be produced.  If the Producing Party is unable to meet any of these requirements due to technical challenges or if producing or identifying such files is unduly burdensome, it will request to meet and confer to discuss alternatives that will be proportional to the needs of the case.

M.    **Embedded Objects.**  Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like attachments to the document in which they were embedded.  Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

N.    **Compressed Files.**  Compression file types (*e.g.,* .CAB, .GZ, .TAR, .Z, .ZIP) must be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files.  The container file itself should not be produced.

O.    **Other ESI that is Impractical to Produce in Traditional Formats (aka, Structured Data).**  The parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats. To the extent a response to discovery requires production of discoverable electronic information contained in a database, the

parties agree to confer to define appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (*e.g.*, Excel, CSV or SQL format).

**P.    Endorsements.**  The Producing Party will brand all production images in the lower right-hand corner with the corresponding Bates/control numbers, using a consistent font type and size.  Bates numbers should include an alpha only prefix (e.g. "ABC"), the Bates numbering should be a minimum of eight (8) characters in length and should not include spaces, underscores, or any other special characters, except hyphens.  The Bates number must not obscure any part of the underlying data. The Producing Party will brand all production images in the lower left-hand corner with all confidentiality designations, as needed, in accordance with confidentiality definitions as agreed to by the parties.

**Q.    Password-Protected Files.**  Password-protected or otherwise encrypted documents must be produced in decrypted format.  The Producing Party must make an attempt to unlock the document prior to production.   If the Producing Party is unable to decrypt a document using reasonable standard forensic techniques, the Producing Party must retain a listing of such documents.

**R.    Hyperlinked Files.**  Upon a reasonable and particularized request, a Producing Party will, to the extent feasible and reasonably accessible, produce or identify responsive and non-privileged files referenced by hyperlinks in produced Documents that are specifically identified by Receiving Party, to the extent such files are in Producing Party's possession, custody or control. If the Producing Party is unable to meet any of these requirements due to technical challenges or if

producing or identifying such files is unduly burdensome, it will request to meet and confer to discuss alternatives that will be proportional to the needs of the case.

**S.**    **Processing of Third-Party Documents.**  A Receiving Party that issues a non-party subpoena may include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce Documents in accordance with the specifications set forth herein. The Receiving Party may request that the non-party simultaneously produce Documents to the Receiving Party and all other Parties. If the non-party produces Documents only to the Receiving Party, to the extent practical given the data volume, productions by a non-party shall be produced by the Receiving Party to all other Parties within seven days.

**8.    PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties will meet and confer about the sources and custodians from whom ESI will be produced. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**9.    METADATA AND FIELDS TO BE INCLUDED IN DOCUMENT PRODUTION**

Metadata will, so long as it is reasonably practical, be provided with ESI productions that contain information in the following fields:

| Field | Comment |
|---|---|
| BegBates | Beginning Bates number |
| EndBates | Ending Bates number |
| BegAttach | Bates number of the first page of a family range |
| EndAttach | Bates number of the last page of a family range |

| Field | Comment |
|---|---|
| Confidentiality | Confidentiality designation under the operative protective order applied to the document |
| Multiple Custodians | Lists all custodians for whom document exists where document has been deduped to a single copy |
| PageCount | Number of pages in a document. |
| FileExtension | Original file extension as the document was maintained in the ordinary course of business. |
| FileSize | File size in bytes |
| Author | Document author information for non-email |
| From | Email From |
| To | Email TO |
| Cc | Email CC |
| BCC | Email BCC |
| Subject | Email Subject |
| Attachments | Name of attached file(s) as maintained in the ordinary course of business. |
| DateCreated | File date and time created MM/DD/YYYY HH:MM AM/PM |
| DateLastModified | File date and time modified MM/DD/YYYY HH:MM AM/PM |
| DateSent | Email date and time sent MM/DD/YYYY HH:MM AM/PM |
| DateReceived | Email date received. MM/DD/YYYY |
| DateAccessed | Date and time accessed MM/DD/YYYY HH:MM AM/PM |
| ParentDate | For attachments, date the parent document was sent |

[PROPOSED] STIPULATED ESI ORDER
CASE NO. 2:26-cv-00586-RGK-RAO

- 12 -

| Field | Comment |
|---|---|
| FileName | Name of the file as maintained in the ordinary course of business with extension. |
| Title | Title of the E-Doc |
| MD5Hash | The computer-generated MD5 Hash value for each document. |
| TextPath | The path to the corresponding text file for each record on the delivery media, including filename. |
| NativePath | The path to the native-format file corresponding to each record on the delivery media, including the file name (if a native-format file is provided). |
| FilePath | Paths where file was stored including original file name and extension. This should include paths of all deduplicated documents. |
| HasRedactions | Whether or not the document has redactions |

## 10.    PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

**Privilege Logs.**  Consistent with the Federal Rules of Civil Procedure, the parties agree to serve a privilege log providing information regarding all documents withheld or redacted under a claim of privilege and/or work product. The parties will meet and confer regarding the contents and format of the privilege log.

The parties agree that certain privileged communications or documents need not be included on a privilege log, including:  (i) communications regarding litigation holds or preservation, collection, or review in this or any Litigation; (ii) any communication or document that post-date the filing of this complaint; and (iii) work product of counsel and parties relating to this Litigation.

The parties agree to negotiate a reasonable time within which to exchange privilege logs.

**Privilege Log Contents.** For each document withheld or redacted, the privilege log must contain the following information: (i) the date of the document; (ii) the identity of all persons who authored, signed, or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to explain the subject matter of the document and the basis of the claim of privileged or immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and (vi) for redacted documents only, the bates numbers corresponding to the first and last page of any document redacted. For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log should contain some indication that the individual is an attorney (for example, an asterisk next to each attorney's name).

**Protocols for Logging E-mail Chains.** Any e-mail chain (i.e., a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim must be logged as one document and must be identified by the top-most e-mail in the chain that is withheld or redacted. The parties are not required to log identical copies of an e-mail that is included in a chain that has been logged in accordance with this Paragraph.

**Protocols for Logging "Families."** Each member of a family (i.e., e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity or any similar claim must be identified on the log separately.

11. **DOCUMENTS PROTECTED FROM DISCOVERY**

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a

waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.  The Stipulated Protective Order in this proceeding will govern the procedure for clawback of documents.

b) Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

## 12.   MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.


**IT IS SO STIPULATED**, through Counsel of Record.


Dated:  August 4, 2026

_/s/ Ryan Bricker_
Counsel for Plaintiff
PATAGONIA, INC.

Dated:  August 4, 2026

_/s/ Rocco J. Screnci_
Counsel for Defendants
ENTREPRENEUR ENTERPRISES, INC. dba PATTIE GONIA PRODUCTIONS and WYN WILEY


## SIGNATURE ATTESTATION

I, Ryan Bricker, attest that the other signatory listed, and on whose behalf this filing is submitted, concurs in the filing's content and has authorized the filing.

Dated:  August 4, 2026


_/s/ Ryan Bricker_
Ryan Bricker

**IT IS ORDERED** that the forgoing Agreement is approved.


Dated: 08/04/2026

_Rozella A. Oliver_
Honorable Rozella A. Oliver
United States Magistrate Judge

[PROPOSED] STIPULATED ESI ORDER
CASE NO. 2:26-cv-00586-RGK-RAO

- 16 -