IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

PATAGONIA, INC., )
)
Plaintiff, )
)
vs.
)
ENTREPRENEUR ENTERPRISES, )
INC., et al., )
)
Defendant. )

DEPOSITION OF WHITNEY CLAPPER
Conducted via Zoom
Witness Location: Ojai, California
Tuesday, October 27, 2026

REPORTED BY: CARRIE A. SNODGRASS, RMR
JOB NO.: 8541094

Page 14

MR. GILCHRIST: Lacks foundation; it's vague.
BY MR. SCRENCI:
Q. If you understand, you can answer, Ms. Clapper.
A. I -- gosh, it would have been close to 2020, perhaps. I don't remember the exact date.
Q. Do you recall generally when you first got in contact with Wyn, what those discussions related to?
A. Curiosity, wanting to understand who this person is and what their goals were in the outdoor industry.
Q. What do you remember of what those goals were in the outdoor industry that Wyn told you?
A. At that point, they were still trying to figure it out.
Q. Did you ever put Wyn in contact with people who worked at Patagonia?
A. Yes.
Q. And what's your recollection of how that happened?
A. I'm sorry. How I put them in touch or --
Q. Yes.
A. Oh. I mean, email.

Page 15

Q. Do you recall any particular people that you put Wyn -- yeah -- that you put Wyn in touch with at Patagonia?
A. Seeing your document, you're reminding me. Otherwise, we've had -- Rob Tadlock was one of the only people I remember, and then your document shows worn wear contacts.
Q. So I will share my screen to what will be marked Defendant's Exhibit C. So do you see my screen now?
A. I do.
MR. GILCHRIST: Can you make it larger, Rocco? I can't see it.
MR. SCRENCI: Yes, zoomed in.
MR. GILCHRIST: Okay.
(Thereupon, Defendant's Exhibit C was attached to the deposition.)
BY MR. SCRENCI:
Q. Is the email address at the top your former Patagonia email address?
A. It is.
Q. I can scroll down, or if you have it open in front of you, you can review it yourself to confirm. But does this appear to be a true and accurate copy of an email you sent during your time

Page 16

working for Patagonia?
A. It must be.
Q. So this email appears to be dated February 27, 2020. Is that correct?
A. Looks like it.
Q. Who is -- and you can correct me on the pronunciation here -- Camila Gernais(ph)?
A. She wasn't there very long. I can't remember what department she was in; maybe it could have been marketing or storytelling; I'm not quite sure.
Q. What's your recollection of the context of this email that I'm showing you?
A. That we talked on the phone up until this point and hadn't met in person and that we were looking for a way for Patagonia to support Pattie.
Q. This email mentions OR, if you look at sort of the second paragraph. It says OR. Do you see that?
A. I do.
Q. What is OR?
A. Outdoor retailer.
Q. Was this OR outdoor retailer an event that you had attended?
A. Yes.

Page 17

Q. What type of event is it?
A. It's a big outdoor trade show where every single brand nonprofit attends.
Q. At the time of this email, do you know if Pattie Gonia was working with any other companies?
A. I don't.
Q. Do you have any recollection of whether Pattie Gonia was working with other companies at any point?
A. At some point, yes.
Q. What is your recollection of that?
A. There were --
MR. GILCHRIST: Overbroad, or possibly overbroad. Sorry. Go ahead.
THE DEPONENT: No problem. There were other companies that supported Pattie. I don't remember how many or which ones.
BY MR. SCRENCI:
Q. Do you know -- strike that. Would you recognize particular companies that Pattie may have worked with if you were shown an example?
MR. GILCHRIST: Calls for speculation. You can answer, Whitney.
THE DEPONENT: Oh, thanks. I would have to see an example.

Page 18

BY MR. SCRENCI:
Q. Was Patagonia ever interested in sponsoring Pattie Gonia in connection with advocacy?
MR. GILCHRIST: Objection; overbroad; lacks foundation.
BY MR. SCRENCI:
Q. You can answer if you understand.
A. I don't. I can't say the brand necessarily was, but a lot of people in the brand would have liked a relationship.
Q. Who were those people, to your recollection, that would have liked a relationship with Pattie Gonia?
A. I assume Camila, based on being connected, store staff, advocacy or affinity groups.
Q. I'm going to share my screen again with what is going to be marked as Defendant's Exhibit D. Do you see that being shared on the screen, an email up top that says wynwiley@gmail.com; 1/14/2020 is the Sent date on it?
A. I do.
(Thereupon, Defendant's Exhibit D was attached to the deposition.)
BY MR. SCRENCI:
Q. So if you scroll down, it looks -- scroll

Page 19

down to the email dated December 18th, 2019. Again, this is your email at the top, whitney.clapper@patagonia.com. That was your Patagonia email. Correct?
A. Correct.
Q. So the first line in this email says: "Hi, Camila, I wanted to introduce you to the mind behind Pattie Gonia, Wyn. As you most likely know, Pattie Gonia is a beautiful, very conscious and popular woman who has been using her voice for action specifically when it comes to single-use plastics." Do you see that?
A. I do.
Q. What did you mean by "as you most likely know," at the beginning of that sentence?
MR. GILCHRIST: Objection; overbroad; vague.
BY MR. SCRENCI:
Q. You can answer if you understand.
A. I assume at this point, Pattie was becoming more known on social, and most likely people were following that at the brand.
Q. Do you have any recollection of whether people within Patagonia were following the Pattie Gonia Instagram page?

Page 20

MR. GILCHRIST: Lacks foundation; calls for speculation.
BY MR. SCRENCI:
Q. Just to be clear, I'm asking if you have any personal recollection.
MR. GILCHRIST: Same objections.
THE DEPONENT: I would assume so.
BY MR. SCRENCI:
Q. I believe at some point, you mentioned Rob Tadlock as being a person you connected with Pattie Gonia. Is that correct?
A. Correct.
Q. Mr. Tadlock is in-house counsel at Patagonia. Right?
A. Correct.
Q. So I'm going to ask you a few questions, and as Mr. Gilchrist spoke about earlier, there may be some things that concern potential attorney-client privilege. So I just want to be careful in making sure that you understand when I'm asking you these questions, first that you give Mr. Gilchrist time to object and assert privilege to the extent that he needs to, and second, that I'm not asking for privileged communications; I'm only interested in communications of which you had

Page 21

knowledge that involved people outside Patagonia, such as Wyn and Jenny or another third party, not just communications exclusively between you and Mr. Tadlock or you and others within Patagonia and Mr. Tadlock. Okay?
A. Got it.
Q. So in what context do you recall connecting Pattie Gonia with Mr. Tadlock?
MR. GILCHRIST: Just -- I see you smiling. I have no objection to you answering the question, unless the answer requires you to divulge some conversation that you had with Mr. Tadlock about why he was asking -- if he did, I don't know what the premise is here, but if Mr. Tadlock was talking to you about getting in touch, then I would ask you not to talk about what Mr. Tadlock said. But you can answer the question otherwise.
THE DEPONENT: Yeah. My recollection was it was friendly call wanting to understand again who Pattie was and what they were all about.
BY MR. SCRENCI:
Q. So I can be a bit more specific and sort of direct your attention to specific communications,