KATHERINE MCMORROW (Cal. Bar No. 315723)
kmcmorrow@bakerlaw.com
BAKER & HOSTETLER LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: (310) 820-8800

ROCCO J. SCRENCI (*admitted pro hac vice*)
rscrenci@mcandrews-ip.com
MCANDREWS, HELD & MALLOY LTD.
500 W. Madison Street, Suite 3400
Chicago, IL 60661
Telephone: (312) 775-8000

*Attorneys for Defendants*
*Entrepreneur Enterprises, Inc. dba Pattie Gonia Productions and Wyn Wiley*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION – LOS ANGELES**

PATAGONIA, INC.,

Plaintiff,

v.

ENTREPRENEUR ENTERPRISES, INC. and WYN WILEY,

Defendants.

Case No. 2:26-cv-0586-RGK-RAO

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF PATAGONIA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: December 14, 2026
Time: 9:00 a.m.
Crtrm.: 850, 8th Floor
Judge: Hon. R. Gary Klausner

# TABLE ON CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

- A. Pattie Gonia is a popular drag artist, musician, and activist, and influencer with a distinctive public identity ..... 2
- B. Pattie Gonia's drag act incorporates playful humor and parody ..... 3
- C. Patagonia publicly supports Pattie Gonia for many years ..... 4
- D. Patagonia breaks years of silence and sues for trademark infringement ..... 5

III. SUMMARY JUDGMENT STANDARD ..... 5

IV. ARGUMENT ..... 5

- A. This is not the extreme case warranting summary judgment on likelihood of confusion. ..... 5
  - i. Patagonia mixes and matches disparate uses to manufacture confusion detached from necessary marketplace context ..... 6
  - ii. With the appropriate marketplace context, a reasonable factfinder could find no likelihood of confusion. ..... 7
    - 1. Similarity is disputed ..... 7
    - 2. Proximity is disputed ..... 7
    - 3. Strength is disputed ..... 9
    - 4. The requisite intent is lacking ..... 9
    - 5. Evidence of "actual confusion" is lacking ..... 10
    - 6. Patagonia's surveys are flawed ..... 11
    - 7. Marketing channels are disputed ..... 11
- B. Patagonia's laches argument misapplies the law to the undisputed facts ..... 12

i. Patagonia cannot enjoin almost a decade of goodwill just because Defendants sold merch to drag-show fans ................ 12

ii. Patagonia's unclean-hands argument fails as a matter of law ................ 14

iii. Patagonia misapplies the law on "prejudice" ................ 15

V. CONCLUSION ................ 17

# TABLE OF AUTHORITIES

**Cases**

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
2007 WL 4973852 (C.D. Cal. Aug. 17, 2007) .......... 8

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
486 F.3d 629 (9th Cir. 2007) .......... 11

*adidas-Am., Inc. v. Payless Shoesource, Inc.*,
546 F.Supp.2d 1029 (D. Or. 2008) .......... 16

*Amerisure Mut. Ins. Co. v. Transatlantic Reinsurance Co.*,
2021 WL 4340521 (E.D. Mich. Mar. 18, 2021) .......... 5

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) .......... 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 5

*Cohn v. Petsmart, Inc.*,
281 F.3d 837 (9th Cir. 2002) .......... 10

*Collins v. U.S. Dep't of Veterans Affs.*,
497 F. Supp. 3d 885 (S.D. Cal. 2020) .......... 7

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) .......... 15

*Doctor's Best, Inc. v. Nature's Way Prods., LLC*,
143 F.4th 1101 (9th Cir. 2025) .......... 12

*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*,
880 F.3d 1109 (9th Cir. 2018) .......... 16

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) .......... 9

*Great W. Air, LLC v. Cirrus Design Corp.*,
649 F. Supp. 3d 965 (D. Nev. 2023) .......... 9, 10, 11

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
668 F. Supp. 3d 1025 (C.D. Cal. 2023) .......... 16

*Hasbro, Inc. v. Clue Computing, Inc.*,
66 F. Supp. 2d 117 (D. Mass. 1999) .......... 10

*Icebreaker Ltd. v. Gilmar S.P.A.*,
911 F. Supp. 2d 1099 (D. Or. 2012) .......... 8

*In re Plymouth Motor Corp.*,
46 F.2d 211 (C.C.P.A. 1931) .......... 9

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023) .......... 10

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) .......... 16

*King of the Mountain Sports, Inc. v. Chrysler Corp.*,
968 F. Supp. 568 (D. Colo. 1997) .......... 8

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
762 F.3d 867 (9th Cir. 2014) .......... 7

*Levi Strauss & Co. v. Blue Bell, Inc.*,
632 F.2d 817 (9th Cir. 1980) .......... 11

*Levi Strauss & Co. v. Blue Bell, Inc.*,
778 F.2d 1352 (9th Cir. 1985) (en banc) .......... 11

*Lodestar Anstalt v. Bacardi & Co. Ltd.*,
31 F.4th 1228 (9th Cir. 2022) .......... 6, 9

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
507 F.3d 252 (4th Cir. 2007) .......... 10

*Mach. Head v. Dewey Glob. Holdings*,
2001 WL 1747180 (N.D. Cal. Dec. 13, 2001) .......... 7

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
290 F. Supp. 2d 1083 (C.D. Cal. 2003) .......... 6, 7

*McGraw–Hill Cos., Inc. v. Vanguard Index Trust,*
139 F. Supp. 2d 544 (S.D.N.Y. 2001), *aff'd*, 27 F. App'x 23 (2d Cir. 2001) .......... 15

*Miller v. Glenn Miller Productions, Inc.*,
454 F.3d 975 (9th Cir. 2006) .......... 13

*Monster Energy Co. v. BeastUp LLC*,
395 F. Supp. 3d 1334 (E.D. Cal. 2019) ........ 14

*MyPlayCity, Inc. v. Conduit Ltd.*,
2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) ........ 15

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) ........ 12

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*,
998 F.2d 985 (Fed. Cir. 1993) ........ 11

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
894 F.3d 1015 (9th Cir. 2018) ........ 16

*Rearden LLC v. Rearden Com., Inc.*,
683 F.3d 1190 (9th Cir. 2012) ........ 5

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ........ 5

*S. Cal. Gas Co. v. City of Santa Ana*,
336 F.3d 885 (9th Cir. 2003) ........ 5

*Skechers U.S.A., Inc. v. Vans, Inc.*,
No. CV 07-01703 DSF, 2007 WL 4181677 (C.D. Cal. Nov. 20, 2007) ........ 10

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
809 F.2d 626 (9th Cir. 1987) ........ 5

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
305 F.3d 894 (9th Cir. 2002) ........ 5, 11

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
311 F. Supp. 2d 1023 (D. Or. 2004) ........ 13, 14

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
465 F.3d 1102 (9th Cir. 2006) ........ 14

*Toho Co. v. Sears, Roebuck & Co.*,
645 F.2d 788 (9th Cir. 1981) ........ 10

*Trader Joe's Co. v. Trader Joe's United*,
150 F.4th 1040 (9th Cir. 2025) ........ 12

*Water Pik, Inc. v. Med-Sys., Inc.*,
848 F. Supp. 2d 1262 (D. Colo. 2012)........................................................10

*Whittaker Corp. v. Execuair Corp.*,
736 F.2d 1341 (9th Cir. 1984)........................................................16

*Zobmondo Ent., LLC v. Falls Media, LLC*,
602 F.3d 1108 (9th Cir. 2010)........................................................9

**Other Authorities**

3 Callmann on Unfair Competition, Trademarks & Monopolies (4th ed.)....................9

## I. INTRODUCTION

Patagonia wants this Court to declare as a matter of law that a drag queen's name confuses consumers into thinking she is a billion-dollar outdoor-apparel company. The Court should decline to do so.

For starters, Patagonia's motion rests on a sleight of hand. It takes a fan-designed sticker that was never sold, a handful of emblems sewn onto performance costumes, a line of upcycled shirts that look nothing like Patagonia's goods, years of sponsored social-media content, and countless other activities, and blends them into a single "PATTIE GONIA mark." Patagonia then runs that composite through the *Sleekcraft* factors. But that is not how consumers encounter Pattie Gonia in the market. Nor is it how the law evaluates confusion. Pull the uses apart, and Patagonia's narrative falls apart with them.

What remains is a record full of facts that must be weighed. The parties sell different things to different people through different channels. Patagonia's evidence of "actual confusion" is a collection of secondhand social-media chatter, affiliation questions, likely typos, and, in some cases, consumer discernment—the opposite of confusion.  Patagonia's intent theory conflates parody with a scheme to confuse. And its survey measures confusion in the abstract without tying that confusion to a single lost sale or injured reputation. In short, a reasonable jury could find for Defendants on nearly every factor. That ends the inquiry at this stage.

Patagonia's bid to eliminate laches fares no better. Patagonia knew about Pattie Gonia for years. It matched her fundraiser donations, promoted her work on its blog, shared stages with her, and set its own rules for her brand partnerships. Patagonia now says it could not have sued until Defendants sold merchandise and filed a trademark application because that is when Defendants violated the restrictions Patagonia set about how Defendants could use "Pattie Gonia." But that argument is flawed twice over. First, Patagonia's claims are not limited to merchandise. They reach the same

performances, sponsorships, and advocacy that Patagonia watched, and often applauded, long before the limitations period began. Second, Patagonia only asked that Defendants refrain from placing her name and using designs similar to Patagonia's logos on third-party products. If Patagonia really cared about parody stickers and drag costumes, the time to say so was in 2022, not in 2025 or 2026. Simply put, Patagonia cannot sit on its rights while Defendants build an identity around a name and then insist that the clock started only when it chose to start it.

## II. FACTUAL BACKGROUND

### A. Pattie Gonia is a popular drag artist, musician, and activist, and influencer with a distinctive public identity

Defendant Wyn Wiley adopted the drag persona "Pattie Gonia" in 2018 and quickly gained a massive social-media following. SUF 1.[1] Her work combines drag performance with outdoor recreation, environmental advocacy, and LGBTQIA+ inclusion. SUF 4-5. As Patagonia's own expert acknowledges, "humor" is part of Pattie Gonia's "distinctive public identity as a drag queen, environmental activist, community organizer, and social media influencer." ECF 35-62 ¶ 166. That is because drag is an artform built on parody, satire, and puns. ECF 34-4 at 121:23-122:9; ECF 34-29 ¶ 30.

The core commercial components of Pattie Gonia's identity started in 2019. That year is when Pattie Gonia began providing "sponsored content" for companies looking to reach her audience on social media. SUF 7. In 2019, she also began hosting community events, doing live drag performances, and giving paid speeches promoting equality and environmentalism. SUF 6, 9-10. More recently, in 2023, Pattie Gonia began recording music, including a song with Yo-Yo Ma, titled "Won't Give Up." ECF 35-20 at 23. And in 2024 and 2025 respectively, Pattie Gonia began selling upcycled shirts printed over with custom designs and stickers. *See* ECF 35-20 at 8-9 & DMF 42.

---

[1] "SUF" refers to Defendants' Statement of Uncontroverted Facts (ECF 34-2), filed in support of Defendants' Motion for Summary Judgment. "DMF" refers to Defendants' Statement of Genuine Disputes of Material Fact, filed herewith.

On September 21, 2025, Defendants applied to register PATTIE GONIA as a standard character mark, which claims no "particular font style, size, or color," and thus no design, logo, or stylization. ECF 35-20 at 2; SUF 40.

The application covers five classes:

- **Class 9:** downloadable musical sound recordings and downloadable audiovisual recordings featuring music;
- **Class 16:** stickers, decals, and printed posters;
- **Class 25:** clothing, namely, t-shirts and sweatshirts;
- **Class 35:** online advertising and marketing services; promoting the goods and services of others through endorsements and social-media marketing; and promoting public awareness of environmental sustainability and LGBTQIA2S+ equality; and
- **Class 41:** live musical performances; organizing and conducting drag shows; live performances and personal appearances by a drag artist; motivational speaking in the fields of equality and environmentalism; organizing community sporting and cultural events; and organizing trail and hiking events.

ECF 35-20 at 2-4.

The sticker specimens are not the parody stickers on which Patagonia builds its motion; they bear text-based slogans like "Snow Makes Me Wet" and do not imitate the P-6 logo. ECF 35-20 at 8; DMF 107, 110. The shirt specimens likewise do not use Patagonia's logos or fonts. *Id.* at 9; DMF 42.

**B. Pattie Gonia's drag act incorporates playful humor and parody**

Pattie Gonia's drag routinely riffs on brands and pop-culture icons, from a Patrick Star costume ("patrick gonia") to joking in a TED Talk that "Patagonia vests are indeed very TED drag."[2] ECF 34-29 ¶ 28; ECF 35-17 at 2. She has also placed emblems reading

[2] This joke is likely a reference to the popular association between Patagonia vests and finance or "tech bro" culture. 11/23/26 Screnci Decl., Ex. 84, p. 5.

"pattie gonia" over a banded-sky and mountain background on drag costumes, which appear primarily in humorous Instagram posts. DMF 31-32, 52, 119. Only two images among the many posts promoting her tour show the emblem clearly, and neither is the first image in the album. DMF 32.

In November 2018, a fan posted artwork parodying the P-6 logo, replacing its color scheme with a rainbow sky, adding a silhouette of Pattie Gonia hiking, and substituting "pattie gonia" for "patagonia." DMF 26. The fan owned a sticker-printing business and later supplied stickers with the design. *See generally* ECF 35-23. Defendants never sold them; they gave them to fundraiser donors (including for a fundraiser Patagonia matched donations) and to fans who asked, including Patagonia employees. SUF 37-38.

**C. Patagonia publicly supports Pattie Gonia for many years**

Defendants incorporate their opening brief's account of Patagonia's years of knowledge and support of Pattie Gonia. ECF 34-1 at 2-4. One fact bears emphasis: Patagonia spoke with Defendants in early 2022 only because Hydro Flask, planning a collaboration with Pattie Gonia, consulted Patagonia first. DMF 53-55. That discussion produced Patagonia's three restrictions, which Defendants understood to govern Pattie Gonia's work with third parties. DMF 53-57, 61, 64; SUF 30.

Three facts reinforced that understanding. First, Patagonia met with Defendants separately from Hydro Flask to give them certainty so that "Pattie's broader work can move forward without any disruptions." ECF 34-17 at 2. Second, although the parody stickers and costumes appeared in many Instagram posts by 2022, Patagonia's counsel raised no concern about them, instead asking only that "the parties" not replicate a different design in their partnership. DMF 56, 59, 64; ECF 34-5 at 113:22-25; ECF 34-12 at 2-3. Third, Defendants kept posting the parody stickers without objection, even though Patagonia's Instagram account was repeatedly tagged when she did. DMF 67.

### D. Patagonia breaks years of silence and sues for trademark infringement

Patagonia first objected to the parody stickers in January 2025, and only because it thought Defendants were selling them with the "merch"; it said nothing about Defendants' other work. ECF 34-13 at 2-3. Patagonia sued on January 21, 2026, and has since made clear that it seeks to stop any commercial use of "Pattie Gonia" in connection with the goods and services in the application. ECF 35-3 at 13.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if no reasonable jury could find for the nonmovant, with the evidence viewed and all inferences drawn in the non-movant's favor, and without weighing credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). A movant bearing the burden of proof must establish every essential element beyond controversy, *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003), and the court must disregard movant evidence a jury need not believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## IV. ARGUMENT

### A. This is not the extreme case warranting summary judgment on likelihood of confusion.

Patagonia's analysis rests on flawed premises that obscure genuine factual disputes. Summary judgment on likelihood of confusion is "generally disfavored." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012); *see Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002) (courts grant summary judgment in infringement cases "sparingly," as assessment "usually requires a full record"). It is especially premature here, where Patagonia relies on experts Defendants have not yet deposed or rebutted. At a minimum, the Court should defer ruling until expert discovery closes. *See Amerisure Mut. Ins. Co. v. Transatlantic Reinsurance Co.*, 2021 WL 4340521, at *1 (E.D. Mich. Mar. 18, 2021).

**i. Patagonia mixes and matches disparate uses to manufacture confusion detached from necessary marketplace context**

Marks must be compared as consumers actually encounter them. *Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1260 (9th Cir. 2022) (affirming summary judgment because mark owner's expert focused not on how consumers would encounter the mark on each product, but on the one product on which the mark appeared most prominently). Courts in this District apply the same rule: "trademarks should be considered as they are encountered in the marketplace, taking into account the normal circumstances surrounding purchases of the type of goods they represent." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003).

Patagonia commits the same error as in *Lodestar* on a larger scale. Defendants use "Pattie Gonia" in distinct settings: drag performances and music; sponsored social-media content; paid speaking and activism; and a limited line of upcycled fan merchandise. DMF 42, 110; SUF 5-10. Each presents the name in a different context, to different audiences, and with different content. Patagonia instead grafts the most favorable fact from one setting onto another, producing an alleged infringing use that bears no resemblance to the real world.

The similarity factor shows the problem most clearly. To argue that Defendants "deliberately imitat[ed]" the P-6 logo, Patagonia reproduces the parody sticker and costume emblems. ECF 35-3 at 8. But the stickers were never sold and were given only to fundraiser donors and fans, DMF 30, 40, 106; SUF 37; the emblems appear only on drag costumes, DMF 31-32, 41, 52; and Defendants never use either design to promote third parties. DMF 30, 38(A), 64. Defendants' only merchandise bears entirely different designs with no Patagonia logo or font. DMF 38(A) & (E), 67, 110. Patagonia uses the parody designs to prove "similarity," then uses the merchandise and sponsorships to prove "proximity" and "marketing channels." No consumer ever encounters that

combination. ECF 35-3 at 7-13. A jury is entitled to evaluate each use as it exists in the real-world and not just Patagonia's briefs.

**ii. With the appropriate marketplace context, a reasonable factfinder could find no likelihood of confusion.**

Courts apply the nonexhaustive factors from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 & n.11 (9th Cir. 1979) to evaluate likelihood of confusion. Properly applied, many favor Defendants.

**1. Similarity is disputed**

As discussed, Patagonia overstates "similarity" because Defendants' parody designs are not Pattie Gonia logos. But the flaws with Patagonia's "similarity" arguments do not end there. Patagonia also repeatedly mischaracterizes Defendants' Pattie Gonia identity by collapsing it into one word: "PattieGonia."[3] *See generally* ECF 35-2 & 35-3. While Pattie Gonia's social media handles use one word (as is common with many online usernames), consumers understand "Pattie Gonia" is a two-word name, not a one-word place. DMF 107. More to the point, the trademark examiner did not find the PATTIE GONIA mark confusingly similar to Patagonia's marks. *Id.*

**2. Proximity is disputed**

Patagonia asserts the parties "cover a virtually identical universe of goods and services." ECF 35-3 at 9. That skips the analysis, which asks whether goods are "(1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 875 (9th Cir. 2014). Sharing a "general field" is not enough. *Matrix Motor*, 290 F. Supp. 2d at 1092; *Mach. Head v. Dewey Glob. Holdings*, 2001 WL 1747180, at *6 (N.D. Cal. Dec. 13, 2001) (products "broadly ... relating to music" not similar in use or function); *Collins v. U.S. Dep't of Veterans Affs.*, 497 F. Supp. 3d 885, 898 (S.D. Cal. 2020).

---

[3] Patagonia also repeatedly mispronounced Pattie Gonia's name during Wiley's deposition, likely as another attempt to artificially inflate the "similarity" between Patagonia and Pattie Gonia. *See* Screnci Decl., Ex. 1.1 at 46:4-9.

Patagonia ignores these subfactors, skips some accused services, and overgeneralizes the rest.

**Apparel.** Patagonia sells high-quality gear and apparel for "silent" sports like climbing and skiing. ECF 35-62 ¶ 18. Defendants print custom designs on discarded shirts for fans of a drag act. DMF 42. Apparel aimed at different segments and audiences is not proximate merely because both are clothing. *Icebreaker Ltd. v. Gilmar S.P.A.*, 911 F. Supp. 2d 1099, 1104–05 (D. Or. 2012) (performance outdoor apparel maker, which counted Patagonia among its main competitors, not proximate to fashion apparel labeled "sportswear"); *see also Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 2007 WL 4973852, at *14 (C.D. Cal. Aug. 17, 2007) (no likely post-purchase confusion where only one party made "technical apparel for outdoor sports"). The gap here is wider than in *Icebreaker* and *Abercrombie* still. A jury could readily conclude that upcycled fan merchandise from a drag tour is not proximate to technical outdoor gear.

**Stickers.**[4] Patagonia offers no evidence about its stickers or whether they compete with Defendants', instead dwelling on parody stickers that were never sold. *See generally* ECF 35-2. That ignores its own requested relief, which targets uses for which Defendants "seek[] a PATTIE GONIA trademark registration." ECF 35-3 at 13.

**Defendants' services.** As to the remaining classes in the trademark application, there is no proximity. When Defendants promote third-party goods or services, they do so through traditional sponsored content using the distinct Pattie Gonia identity. DMF 51, 54. Patagonia does not promote third-party goods or services. DMF 113. Indeed, Patagonia's Global Head of Communications testified that Patagonia "as a rule" does not engage in paid collaboration with social-media influencers. DMF 17. When Defendants engage in paid activism, they do so through live appearances or posts as

---

[4] The design on the parody stickers do not count as a "trademark use" as to stickers and is therefore omitted from the analysis. *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 574 (D. Colo. 1997) (design placed on jackets "given away as promotional items" was "not being used in a trademark sense to sell clothes.").

Pattie Gonia. DMF 54, 74. Patagonia, by contrast, typically advances its environmental message through long-form media such as books and documentary films. DMF 17. Defendants put on drag shows and make music. *See* 11/23/26 Screnci Decl., Ex. 82, pp. 15-17, 23-24. Patagonia does not. *See* ECF 35-38 at 2-3.

These services are not complementary or similar in function, and the purchasers differ: brands hiring an influencer to reach a drag audience do not think they are hiring an outdoorwear company. *See Great W. Air, LLC v. Cirrus Design Corp.*, 649 F. Supp. 3d 965, 979–80 (D. Nev. 2023) (different purchasers weaken complementarity and similarity). And a factfinder could conclude that no reasonable consumer would believe Patagonia partnered with competitors like The North Face or Cotopaxi.

**3. Strength is disputed**

Patagonia calls its mark arbitrary. ECF 35-3 at 7. But classification "is a question of fact," *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010), for the jury where the evidence conflicts, *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1034 (9th Cir. 2010).

Patagonia's own evidence shows why. Patagonia chose its name because of the imagery it evokes. 11/23/2026 Screnci Decl., Ex. 85 at 4. A mark requiring imagination to connect it to the product is suggestive. *Lodestar*, 31 F.4th at 1258–59; *see In re Plymouth Motor Corp.*, 46 F.2d 211, 212–13 (CCPA 1931) ("Plymouth" evoked "endurance" and "determination"); 3 Callmann on Unfair Competition, Trademarks & Monopolies § 18:63 (4th ed.) (citing *Plymouth* as suggestive geographic term). A factfinder could decided PATAGONIA, which evokes "glaciers tumbling into fjords, jagged windswept peaks, gauchos and condors," is suggestive of outdoor gear. Ex. 85 at 4. That would narrow the mark's protection.

**4. The requisite intent is lacking**

Patagonia fixates on the parody designs, likely because a parody must, by definition, call its target to mind. *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599

U.S. 140, 161 (2023) (parody must "conjure up" its target). But, again, those designs have no connection to the goods and services in the trademark application on which Patagonia's requested judgment rests. ECF 35-3 at 13. At any rate, calling a brand to mind is not intending to confuse. *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981) (finding intent to confuse "implausible" for "Bagzilla" garbage bags where "Sears means only to make a pun"). The intent to capitalize on another brand is not enough. "[A] plaintiff must show that the defendant intended to profit by confusing consumers." *Id.* at 791 n.2; *see also Skechers U.S.A., Inc. v. Vans, Inc.*, No. CV 07-01703 DSF, 2007 WL 4181677, at *8 (C.D. Cal. Nov. 20, 2007) ("[I]t is the intent to profit by confusing customers that is actionable under trademark law, not the intent to copy"). No evidence suggests Defendants intended to confuse. Quite the opposite: they corrected journalists who linked the name to the company rather than the region, publicly criticized Patagonia, and refrained from selling the parody stickers to avoid a suit. DMF 28-29, 69(A); SUF 27.

**5. Evidence of "actual confusion" is lacking**

Patagonia's actual-confusion evidence is dubious. ECF 35-3 at 11. Patagonia provides no declaration from any consumer who bought Defendants' product thinking it was Patagonia's—only social-media comments and secondhand reports. DMF 76-104. That evidence deserves little weight. *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 124–25 (D. Mass. 1999). Mistaken tags, anonymous posts, and misspellings prove nothing. *Great W. Air*, 649 F. Supp. 3d at 982–83 (court "cannot speculate" whether posters were confused or made typos); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 263 (4th Cir. 2007) (misspellings). *Compare Water Pik, Inc. v. Med-Sys., Inc.*, 848 F. Supp. 2d 1262, 1274 (D. Colo. 2012) (legally inadequate examples of "actual confusion"), *with* DMF 76-104. And in any event, many of Patagonia's examples show discernment, not confusion. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 & n.7 (9th Cir. 2002) (dozens of inquiries "too ambiguous to demonstrate

actual confusion”). Above all, consumers who perceived a connection may simply have been reacting to Patagonia’s own public support of Pattie Gonia. DMF 33(A)-(B), 34-35. That is not confusion; just good memory.

#### 6. Patagonia’s surveys are flawed

Nor can Patagonia’s surveys carry its motion. Infringement “protects only against mistaken purchasing decisions and not against confusion generally.” *Great W. Air*, 649 F. Supp. 3d at 982. The surveys did not identify whether respondents were prospective purchasers of Patagonia’s goods, and nothing suggests harm to Patagonia’s goodwill. ECF 35-53 at 19; DMF 105-106. Patagonia concedes no customer complained of buying a Pattie Gonia product believing it was Patagonia’s. SUF 39. Defendants also dispute the surveys’ design and weight—a question for the factfinder. DMF 105-106; *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1360 (9th Cir. 1985) (en banc). Even a survey showing over 25% confusion earns only a trial, not judgment. *Thane*, 305 F.3d at 902–03.

#### 7. Marketing channels are disputed

Patagonia’s marketing-channels analysis fails on the law and the facts. ECF 35-3 at 12. Its survey tests post-sale confusion—a sweatshirt as worn, a sticker on a water bottle. ECF 35-3 at 11. Post-sale confusion arises after point-of-sale materials are gone, *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980), so marketing channels are beside the point. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 635 (9th Cir. 2007) (citing *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 989–90 (Fed. Cir. 1993)). Patagonia likely resorts to post-sale confusion because no reasonable purchaser would mistake drag-tour merchandise for a billion-dollar outdoor brand associated with white-collar professionals. But Patagonia cannot rely on post-sale confusion for one factor and marketing channels for another.

Patagonia’s reliance on shared online sales, search, social media, and resale platforms also lacks specificity. ECF 35-3 at 12. “[T]he shared use of a ubiquitous

marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011). The proper inquiry asks whether the parties' customer bases overlap and how the parties actually advertise and market their products. *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1052 (9th Cir. 2025).

A jury could find the channels differ: Defendants market only through social media and in-person events, while Patagonia "as a rule" avoids influencers and sells through retail stores, online retailers, and its own website and stores. DMF 17, 43, 113; SUF 35. *See Doctor's Best, Inc. v. Nature's Way Prods., LLC*, 143 F.4th 1101, 1112 (9th Cir. 2025) (no likely confusion absent overlapping channels).

### B. Patagonia's laches argument misapplies the law to the undisputed facts

#### i. Patagonia cannot enjoin almost a decade of goodwill just because Defendants sold merch to drag-show fans

As discussed in Defendants' opening brief (ECF 34-1 at 6-14), Defendants are entitled to summary judgment on laches. Patagonia admittedly knew about Defendants' use of "Pattie Gonia" since 2019 and did nothing to stop it. Indeed, Patagonia applauded Defendants' work, donated to Pattie Gonia's fundraisers, and shared the stage with her at industry events. Waiting until 2026 to sue was unreasonable as a matter of law, and Defendants face severe prejudice—indeed, an existential threat to their business—if this case goes on.

To resist this reality, Patagonia first tries to justify its over six-year delay. But Patagonia's justification defies even its own narrative. Patagonia contends that the combination of Defendants' merchandise and trademark application first created the need to sue because, until then, Defendants' work was expressive. ECF 35-3 at 15. According to Patagonia, the circumstances materially changed when Pattie Gonia "announced a clear commercial purpose" by selling "branded apparel." *Id.* at 15-16. That theory fails for two reasons.

First, Patagonia's claims are not confined to merchandise. Patagonia seeks judgment that "all commercial uses for which PattieGonia seeks a PATTIE GONIA trademark registration are infringing." ECF 35-3 at 13. Those uses include entertainment and production services, brand sponsorships, and advocacy work, Patagonia knew (or should have known) about long before the trademark application was filed. Even though Patagonia says it "never ignored PattieGonia's visible commercial activities" ECF 35-3 at 15, its own expert identifies Pattie Gonia's history of collaborations with prominent outdoor brands, many from 2021 and earlier, as a source of potential confusion. DMF 51; SUF 45. Patagonia cannot have it both ways. Delay is measured by "the conduct upon which the claimant bases its infringement claim." *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 311 F. Supp. 2d 1023, 1032 (D. Or. 2004). So Patagonia cannot urge that the "expressive origins" of Pattie Gonia are "material to assessing the reasonableness of Patagonia's conduct," while also claiming those same activities must support confusion for activities that have persisted since 2019. *See* ECF 35-3 at 15; 11/23/26 Screnci Decl., Ex. 88. Simply put, Defendants' drag-show merch line and trademark application do not retroactively transform "expressive" conduct into commercial use. *Cf. Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 979 (9th Cir. 2006) ("Registration does not create a mark or confer ownership; only use in the marketplace can establish a mark"). The reality is that Defendants' work was commercial all along, and Patagonia knew it.[5]

Second, as discussed in Defendants' opening brief (ECF 34-1 at 16-17), Defendants' merch line is not progressive encroachment. Defendants are not selling to

---

[5] Patagonia's obsession with Defendants' trademark application and discovery responses misses the mark. The trademark application—then handled by a different law firm—inadvertently listed the wrong first-use date, which was corrected when the precise issue about first use in commerce was pressed during discovery. DMF 75; 11/23/26 Screnci Decl., Ex. 81. Nobody has ever disputed that Patagonia's main marks pre-date Defendants' first-use date, nor does Patagonia genuinely dispute that Defendants' first use in commerce for Classes 35 and 41 pre-date the laches period.

a mass market; they are selling to fans of Pattie Gonia's drag performance. *See Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006) (no progressive encroachment unless the defendant "'expand[ed] its business into *different* regions or into *different* markets.'"). Patagonia's cited authority does not refute this point. *See* ECF 35-3 (citing *Monster Energy Co. v. BeastUp LLC*, 395 F. Supp. 3d 1334, 1366-67 (E.D. Cal. 2019)). If anything, it confirms Patagonia's overreach. In *Monster*, the court rejected the argument that laches applied despite the defendants' use of the mark to sell shirts and hats for eight years before the suit. 395 F. Supp. 3d at 1366–67. This is because the plaintiff's claims "stem[med] from defendant's use of its marks in connection with its BeastUp energy drink, not prior use in connection with clothing." *Id.* But, again, Patagonia's claims are not limited to clothing. In fact, clothing makes up a relatively minor part of what Patagonia claims as infringement. *See* ECF 35-38 (identifying Defendants' goods and services accused of infringement). At any rate, even if the Court finds a fact dispute over the merch line, it should still grant summary judgment for Defendants on the remaining classes of goods and services in Defendants' trademark application. *See Tillamook Country Smoker*, 311 F. Supp. 2d at 1033.

**ii. Patagonia's unclean-hands argument fails as a matter of law**

Patagonia argues Defendants want it "both ways" because they invoke parody while also asserting laches. ECF 35-3 at 2, 17. The argument has it backwards. A defendant need not concede infringement to assert laches. That "would render the laches defense 'spineless.'" *Tillamook Country Smoker*, 311 F. Supp. 2d at 1032. Defendants properly relied on Patagonia's own contentions, which assert that activities dating as far back as 2018 are now proof of infringement. *See* ECF 34-26 at 105-111.

Patagonia's unclean-hands theory also assumes Defendants willfully defied the restrictions that Patagonia gave in 2022. ECF 35-3 at 18. But that premise is flawed because it requires a revisionist telling of what those restrictions were: Patagonia says

they cover everything Defendants do, while Defendants testified they understood them to govern third-party sponsored content. DMF 64; SUF 30. Patagonia's version is attorney argument—its witness recalled only the "general tenor" of the talks—while Defendants' is sworn testimony reinforced by real-world facts. SUF 49, 53; DMF 64, 67.

But even if that were enough to create a fact dispute about the interpretation of those restrictions, it makes no difference to the laches argument. There cannot, as a matter of law, be bad faith when a party genuinely believed its actions were permitted by the trademark owner. *See MyPlayCity, Inc. v. Conduit Ltd.*, 2012 WL 1107648, at *21 (S.D.N.Y. Mar. 30, 2012). Courts have thus held that there can be no willful infringement when a case involves the parties' "divergent interpretations" of an ambiguous agreement. *See McGraw–Hill Cos., Inc. v. Vanguard Index Trust,* 139 F. Supp. 2d 544, 556 n.6 (S.D.N.Y. 2001), *aff'd*, 27 F. App'x 23 (2d Cir. 2001) ("This case involves divergent interpretations of an ambiguous license agreement, not willful infringement of a plaintiff's trademarks."). There is therefore no genuine dispute of *material* fact on whether Defendants acted in good faith.

**iii. Patagonia misapplies the law on "prejudice"**

Patagonia's prejudice argument begins with an omission. The Ninth Circuit recognizes two forms of laches prejudice: evidentiary and expectations-based. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). Patagonia addresses only the second. ECF 35-3 at 18-19. Evidentiary prejudice includes "lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Danjaq*, 263 F.3d at 955. *Id.* The record is full of it. Patagonia's Chief Impact and Communications Officer could not recall when she first learned of Pattie Gonia, her interactions with Pattie Gonia's Instagram account, or which Patagonia representatives attended the industry events at which Wiley handed the challenged stickers to Patagonia employees. SUF 51; ECF 34-4 at 96:18-23. Patagonia's in-house counsel, who conducted the

critical February 2022 discussions, could testify only to the "general tenor" of those discussions. SUF 53. And several Patagonia employees with relevant knowledge have left the company. SUF 54. Patagonia's silence on these facts speaks volumes.

As for economic prejudice, Patagonia demands that Defendants tie specific investments to a belief Patagonia would not sue. ECF 35-3 at 18. The law requires no such link; it suffices that a defendant "continued to build a valuable business around its trademark" during the delay. *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1028 (9th Cir. 2018) (trade shows, advertising, warehouse, and workforce expansion) (citing *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984)); *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 668 F. Supp. 3d 1025, 1043–44 (C.D. Cal. 2023) (continued practices accruing potential liability); *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1119 (9th Cir. 2018) ("at least some reliance" is enough). Defendants built their entire business around the name, hired staff and hundreds of contractors, and entered partnerships under Patagonia's own conditions. DMF 74; SUF 42-43, 61.[6]

The prejudice is especially severe because Pattie Gonia is Defendants' identity. DMF 74, 107; SUF 42-44. Patagonia's own expert admits as much: "Pattie Gonia has developed a distinctive public identity as a drag queen, environmental activist, community organizer, and social media influencer." ECF 35-62 ¶ 166. At bottom, Pattie Gonia is the performer, the persona, and the business; forcing a change now would destroy the brand equity built while Patagonia watched. SUF 42; *see also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 839 (9th Cir. 2002) (finding prejudice defendant "could have invested its resources in shaping an alternative identity").

---

[6] Patagonia's reliance on *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F.Supp.2d 1029, 1070 (D. Or. 2008) misses the point for the same reasons its likelihood-of-confusion theory fails: Defendants built goodwill in PATTIE GONIA as a source designation, not in the parody stickers. ECF 35-3 at 18; DMF 30, 74, 107.

## V. CONCLUSION

For at least these reasons, the Court should deny Patagonia's Motion for Partial Summary Judgment.

Respectfully submitted,

Dated: November 23, 2026

By: /s/ *Rocco J. Screnci*

Rocco J. Screnci (*admitted pro hac vice*)
rscrenci@mcandrews-ip.com
MCANDREWS, HELD & MALLOY LTD.
500 W. Madison Street, Suite 3400
Chicago, IL 60661
Telephone: (312) 775-8000

Katherine McMorrow (SBN 315723)
kmcmorrow@bakerlaw.com
BAKER & HOSTETLER LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: (310) 820-8800

*Attorneys for Defendants Entrepreneur Enterprises, Inc. and Wyn Wiley*

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Entrepreneur Enterprises, Inc. and Wyn Wiley certifies that this brief contains fewer than 5,600 words and 20 pages, which complies with the word limit set by Court Order dated February 3, 2026 (ECF 13).

Respectfully submitted,

Dated: November 23, 2026

By: /s/ *Rocco J. Screnci*

Rocco J. Screnci (*admitted pro hac vice*)
rscrenci@mcandrews-ip.com
MCANDREWS, HELD & MALLOY LTD.